UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JEFFREY A. MORNINGSTAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil No. 07-105-ART |
| v. | ) | |
| | ) | |
| STEVE HANEY, Warden, Northpoint | ) | **MEMORANDUM OPINION** |
| Training Center, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Jeffrey A. Morningstar filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. R. 1. According to local practice, the matter was referred to United States Magistrate Judge Edward B. Atkins for the preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Judge Atkins recommended that Morningstar's Petition be denied, R. 16, and Morningstar objects to that recommendation, R. 18.[1] Having reviewed Morningstar's objections de novo, the Court agrees with Judge Atkins's recommendations. Accordingly, the Court denies Morningstar's Petition.

## I.  BACKGROUND

Neither party challenged Judge Atkins's description of the procedural background in the Report and Recommendation, and, thus, the Court relies on it throughout this Opinion. A grand jury indicted Morningstar on four counts of second degree rape based on allegations that he engaged in sexual intercourse with "C.C.," who was under fourteen years of age. R. 16 at 2.

---

[1]    Morningstar filed his objections twice, R. 18 & 19. They are the same, though.

C.C. and her mother moved in with Morningstar in 2002 when C.C. was 12 years old.  *Id.*
According to C.C., Morningstar raped her repeatedly in their home and once in the back of his
Nissan Pathfinder in June and July of 2002.  *Id.*  C.C. later disclosed the rapes to her aunt, who
contacted the Kentucky State Police.  *Id.*

Morningstar pled not guilty to the charges and was tried before a jury in Pike Circuit
Court.  *Id.*  The jury found Morningstar guilty on all four counts.  *Id.*  In accordance with the
jury's recommendation, the trial court sentenced Morningstar to five years for each of the four
counts, with the sentences running consecutively.  *Id.*  Following his conviction, Morningstar
appealed to the Kentucky Supreme Court, raising two issues: (1) that the trial court violated his
constitutional right to confront adverse witnesses by improperly applying Kentucky Rule of
Evidence 412, Kentucky's rape shield law, and (2) that the trial court erred in not allowing into
evidence a letter written by the victim in which she accused other men of molesting her.  *Id.*;
*Morningstar v. Commonwealth*, No. 2005-SC-000894-MR, 2007 WL 189020, at *1 (Ky. Jan. 25,
2007) (unpublished).  The Kentucky Supreme Court found both issues without merit and affirmed
his conviction in a unanimous opinion.  *Morningstar*, 2007 WL 189020, at *6.

On May 11, 2007, Morningstar, acting pro se, filed a Petition for Writ of Habeas Corpus
in this Court.[2]  R. 1.  He raised the same two issues as he did in his appeal to the Kentucky
Supreme Court.  *Id.* at 5–6.  Additionally, Morningstar raised a sufficiency-of-the-evidence claim
in connection with the trial court's failure to admit C.C.'s letter by arguing there was insufficient
evidence without the letter.  R. 1, Memo. of Facts at 15–16.  In contrast, in his direct appeal to

---

[2]    Because Morningstar is proceeding pro se, his pleadings are held to a less stringent standard than those
prepared by an attorney.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

the Kentucky Supreme Court, he argued only that the failure to admit the letter violated the Kentucky Rules of Evidence. R. 16 at 5–6. The Commonwealth filed an answer to Morningstar's Petition, R. 9, to which Morningstar filed a reply, R. 12.

Subsequently, Judge Atkins issued his Report and Recommendation in which he recommended that Morningstar's Petition be denied and that the case be dismissed with prejudice. R. 16 at 17. Judge Atkins concluded that Morningstar's Sixth Amendment rights were not violated when the trial court limited his cross-examination of C.C. because the excluded questions concerned C.C.'s general character and credibility rather than her bias, prejudice, or motive. *Id.* at 12–14. With respect to the second alleged error, Judge Atkins first noted that defense counsel had not moved to admit the letter written by C.C. *Id.* at 16. As a result, the trial court never denied admission of the letter into evidence, rather the court did not allow the jury to view the letter after the jury requested to see it during deliberations. *Id.* at 15. Addressing the merits of this claim, Judge Atkins concluded that a reasonable trier of fact could find guilt beyond a reasonable doubt based on the record evidence even with the absence of the letter and that any violation of state law with respect to C.C.'s letter did not warrant habeas relief. *Id.* at 16–17. Judge Atkins also denied Morningstar's request for an evidentiary hearing. *Id.* at 3.

Morningstar filed an objection to Judge Atkins's Report and Recommendation raising the following issues:

(1)     The questions excluded on his cross-examination of C.C. were protected by the Sixth Amendment. R. 18 at 2–5.

(2)     The trial court's failure to allow the jury to review the letter during deliberations is the type of state-law violation that warrants habeas relief. *Id.* at 5–6.

(3)     There was insufficient evidence to convict him.[3]  *Id.* at 6–7.

(4)      An evidentiary hearing is required.  *Id.* at 1–2.

A district court must make a de novo determination of those portions of a magistrate judge's recommended disposition to which an objection is made.  28 U.S.C. § 636(b)(1)(C). However, the "statute does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection," *Thomas v. Arn*, 474 U.S. 140, 149 (1985), and as such "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings," *id.* at 150.

## II.    CONFRONTATION CLAUSE

### A.    Background Specific to Morningstar's Sixth Amendment Claim

Morningstar's objection to Judge Atkins's Report and Recommendation regarding his Sixth Amendment confrontation rights revolves around the restrictions imposed by the trial court on C.C.'s cross-examination.  On direct examination, the prosecution asked C.C. whether she was concerned about getting pregnant as a result of the rapes, and she responded that she was.  R. 16

---

[3]      Morningstar actually tied his sufficiency-of-the-evidence objection to his claim that the trial court erred in failing to admit the letter in which C.C. accused other men of molesting her by arguing there was insufficient evidence without the letter.  R. 1, Memo. of Facts at 15–16.  Such an argument, however, lacks merit because a sufficiency-of-the-evidence analysis tests only the evidence admitted.  *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979) ("[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").  Evidence not admitted–such as the letter–thus plays no part in determining whether there was sufficient evidence to support Morningstar's conviction.  Because pro se pleadings are held to less stringent standards than those prepared by attorneys, the Court construes Morningstar's claim as challenging the sufficiency of the evidence separate from the alleged state-law error of failing to admit C.C.'s letter.  In sum, while Morningstar argued that the trial court erred in not admitting C.C.'s letter for two reasons–state evidence law and sufficiency of the evidence–for the benefit of Morningstar the Court construes his sufficiency-of-the-evidence claim as a standalone claim.

at 9.  On cross-examination, defense counsel's first question was, "[y]ou say you were worried

about getting pregnant?"  *Id.*  C.C. responded in the affirmative.  *Id.*  Defense counsel then asked,

"[i]n fact, you did get pregnant, did you not?"  *Id.*  Before C.C. could respond, the prosecution

objected.  *Id.*  Defense counsel indicated that he had a letter written by C.C. in which she claimed

that she was pregnant, and he argued that any questions regarding the pregnancy and letter were

permissible methods of impeachment.  *Id.*  The prosecution argued that questioning the victim

about a pregnancy that occurred after the rapes had concluded would violate Kentucky's rape

shield law.  *Id.* at 9–10.  The trial court declared a recess to consider the matter further.  *Id.* at 10.

After the recess, the trial court ruled that defense counsel's line of questioning was impermissible

under KY. R. EVID. 412.  *Id.*  Because questions about the pregnancy had been asked in front of

the jury, the prosecution advised the court that the parties had agreed on a way to resolve the

issue.  *Id.*  As part of this arrangement, the prosecution moved for C.C.'s letter not to be admitted

into evidence or referred to in front of the jury.  *Id.*  Defense counsel did not object to the motion,

but he expressly reserved his right to question the victim about the letter on avowal.[4]  *Id.*

When the trial resumed, Morningstar's counsel asked C.C., "[h]ave you ever told anyone

that you were pregnant?"  *Id.*  C.C. responded that she had.  *Id.*  Morningstar's counsel then

asked, "[d]id you tell [them] it was Mr. Morningstar?"  *Id.* (second alteration in original).  C.C.

responded that she did not tell anyone that Morningstar had impregnated her.  *Id.*

On avowal, C.C. testified that any letters she wrote about her pregnancy fears were

---

[4]      Testimony by avowal is "a procedure by which excluded evidence is presented outside of the jury's
presence and becomes a part of the record for appellate review."  *Crane v. Sowders*, 889 F.2d 715, 716 (6th
Cir. 1989).  Avowal testimony is the equivalent of an offer of proof under the Federal Rules of Evidence.
*Hartley v. St. Paul Fire & Marine Ins. Co.*, No. 03-6208, 2004 WL 2940852, at *5 n.6 (6th Cir. Dec. 21,
2004) (unpublished).

written a year or two after the rapes occurred. *Id.* C.C. also testified that she wrote she was afraid that someone other than Morningstar had impregnated her and again testified that she never told anyone Morningstar had impregnated her. *Id.*

    **B.**    **Standard of Review**

    Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

    A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court's decision. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner. *Id.* at 409–10. Though only Supreme Court case law is relevant in determining what federal law is "clearly established," the decisions of the United States Courts of Appeals may be informative to the extent the circuit courts have already reviewed and interpreted the relevant Supreme Court case law to determine whether the Court has clearly established a legal principle or right. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

## C.      Morningstar's Sixth Amendment Rights

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. AMEND. VI.  The right to confrontation "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316.  Indeed, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* at 315–16 (quotation omitted).  At the same time, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Interpreting the Supreme Court precedent regarding the Confrontation Clause, the Sixth Circuit has noted,

> [T]he Supreme Court has "distinguished between a 'general attack' on the credibility of a witness–in which the cross-examiner intends to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in this testimony"–and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Lewis v. Wilkinson*, 307 F.3d 413, 419 (6th Cir. 2002) (quoting *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000)).  Under the Sixth Amendment, questions on cross-examination that are aimed at revealing motive, bias, or prejudice of a witness must be allowed, but questions that relate only to a general attack on the credibility of a witness can be limited.  *See Boggs*, 226 F.3d

at 740 ("[T]he Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct. . . . Under *Davis* and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias, or prejudice of a witness/accuser.") (emphasis in original).

Judge Atkins concluded that the restrictions imposed by the trial court on C.C.'s cross-examination did not violate the Sixth Amendment because the questions concerned C.C.'s general character and credibility rather than her motive, bias, or prejudice.  R. 16 at 12–14.  In his objection to Judge Atkins's Report and Recommendation, Morningstar argues that the Sixth Amendment protected the excluded questions because they were aimed at exposing C.C.'s bias and motive.  R. 18 at 3.

Examining the direct and cross-examinations of C.C., as described above, reveals no Sixth Amendment violation because the Court agrees with Judge Atkins that any questions about C.C.'s pregnancy fears concerned her general character and credibility and not her motive, bias, or prejudice.  The questions excluded by the trial court, but asked by Morningstar's counsel on avoval, related to letters C.C. had written one to two years after the rapes occurred.  R. 16 at 10.  It is not apparent to the Court how questions regarding C.C.'s fears of impregnation by someone other than Morningstar one to two years after the rapes occurred relate to her motive or bias as a witness against Morningstar.  As Judge Atkins noted, even the reasons put forward by Morningstar demonstrate the excluded questions focused on C.C.'s general character and not her motive or bias against Morningstar.  *Id.* at 13.  In his reply brief in support of his Petition, Morningtar stated, "[the letters regarding C.C.'s pregnancy] would have showed, or proven, 1) The victim's propensity to fabricate; 2) **The victim's character, or lack thereof**; and 3) The

-8-

victim's contradictions, which would have raised questions of doubt to any reasonable jury." R. 12 at 3 (emphasis added). Similarly, in his objection to Judge Atkins's Report and Recommendation, Morningstar argued, "[t]he truthfulness of the victim, the victim's motive, and **the victim's character** are all essential elements of Petitioner's Defense, as well as the claim against the Petitioner." R. 18 at 4 (emphasis added).

To the extent the excluded questions could bear on C.C.'s bias, prejudice, or motive, the jury had sufficient information regarding C.C.'s pregnancy fears to assess these factors. In *Boggs*, the Sixth Circuit stated that if a trial court improperly limited cross-examination from which a jury could have assessed a witness's bias, prejudice, or motive to testify, a court must "assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive." *Boggs*, 226 F.3d at 739. Here, based on the agreement between the prosecution and the defense, defense counsel asked C.C. on cross-examination both whether she had ever told anyone that she was pregnant and whether she had told anybody that Morningstar impregnated her. The excluded questions asked on avowal regarding C.C.'s fears of pregnancy and the letters she wrote concerning those fears add minimal information to what the jury already had heard on cross-examination. As a result, the jury had sufficient information regarding this subject to assess any bias, prejudice, or motive that could result.

The Court is aware of Sixth Circuit decisions subsequent to *Boggs* that have called into question the distinction between an attack on a witness's general credibility and an attack directed toward revealing bias, prejudice, or motive for purposes of the Sixth Amendment. *See Hargrave v. McKee*, No. 05-1536, 2007 WL 2818339, at *8 (6th Cir. Sept. 27, 2007) (unpublished) (stating

-9-

that the Sixth Circuit had "cast considerable doubt" on *Boggs*' distinction between an attack on general credibility and an attack regarding bias, prejudice, or motive); *Vazquez v. Jones*, 496 F.3d 564, 573–74 (6th Cir. 2007) (noting that *Boggs* addressed the special context of application of a rape-shield statute and concluding that "*Boggs* is better seen as a case about the court's broad discretion to limit the scope of cross-examination to prevent undue harassment and the like"). Even though these decisions do not repudiate the distinction between general credibility and bias, prejudice, or motive and did recognize the unique context of rape-shield statutes, they arguably suggest it may be inappropriate for this Court to rest its holding that Morningstar's Sixth Amendment rights were not violated on the basis that the excluded testimony went only to C.C.'s general character.

As a result and in an abundance of caution, the Court also analyzes Morningstar's Sixth Amendment objection with reference to the reasonableness standard set forth in *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986): "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

Under this standard, the Court finds that the trial court's restrictions on Morningstar's cross-examination of C.C. were reasonable in light of the information Morningstar sought to obtain and the questions he was allowed to ask. Here, Morningstar's counsel was able to ask C.C. on cross-examination whether she was worried about getting pregnant, whether she had told other people she thought she was pregnant, and whether she told anyone she thought the father was Morningstar. R. 16 at 9–10. The testimony on avoval that was excluded–C.C.'s testimony

-10-

that she wrote the letters about her pregnancy fears one to two years after the rapes and that she was afraid she was impregnated by someone other than Morningstar, *id.* at 10–added very little to the testimony already obtained on cross-examination and largely was repetitive of it.  Such testimony appears to have minimal relevance other than to demonstrate that C.C. engaged in other sexual behavior.

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).  The Court concludes that Morningstar did in fact have an opportunity for effective cross-examination in spite of the limitations imposed by the trial court; therefore, the Kentucky Supreme Court's decision upholding the trial court's limitations on Morningstar's cross-examination of C.C. was not contrary to or an unreasonable application of clearly established federal law.

## III.   ERROR OF STATE LAW IN FAILING TO ADMIT THE LETTER

### A.   Background Specific to the Letter

Morningstar's second objection to Judge Atkins's Report and Recommendation originates with the trial court's refusal to allow the jury to view during deliberations a letter obtained from proceedings before the Pike County Family Court in which C.C. accused other men of molesting her.  Both the Kentucky Supreme Court in its opinion and Judge Atkins in his Report and Recommendation described the factual background for this claim.  As neither party challenged or disputed their descriptions, the Court will rely on them here.

As part of his case-in-chief, Morningstar re-called C.C. to the stand.  R. 16 at 14.  Defense counsel asked her whether she had ever been molested by anyone other than Morngninstar.  *Id.*

-11-

C.C. testified that no one else had molested her. *Morningstar v. Commonwealth,* No. 2005-SC-000894-MR, 2007 WL 189020, at *5 (Ky. Jan. 25, 2007) (unpublished). C.C. also testified that she had been told that her father had molested her, but later was told that he had not in fact molested her. *Id.* She further denied that her former step-father and his uncle had molested her. *Id.* Defense counsel then asked C.C. whether she had written a letter to Pike Family Court Judge Thompson claiming that she had been molested by anyone other than Morningstar, to which the prosecution objected on the basis that it had not been provided with the letter in a timely basis. R. 16 at 14. The judge dismissed the jury to discuss the issue with the parties. *Id.* During this time, the trial judge noted that he was not inclined to admit the letter. *Id.* At the request of the prosecution, the judge declared a brief recess to allow the prosecution to review the letter and talk to C.C. about it. *Id.* at 15.

When the trial resumed, Morningstar's counsel questioned the victim about the contents of the letter, specifically whether she had ever accused her father, former step-father, and step-father's uncle of molesting her. *Id.* C.C. responded that her aunt had drafted the content of the letter in which she accused them of molesting her because she wanted C.C. to be removed from her mother's custody. *Id.* C.C. testified that she copied the letter in her own handwriting and signed it, but that the accusations were not true. *Id.* Defense counsel never moved to admit the letter into evidence or to admit avowal testimony to authenticate the document and tender it to the trial court as an avowal exhibit. *Morningstar,* 2007 WL 189020, at *5.

During closing arguments, Morningstar's counsel recounted C.C.'s testimony regarding the false accusations in the letter. Referencing the letter, defense counsel stated, "if she would lie to [Judge Thompson], she would lie to you." R. 16 at 15 (alteration in original). Shortly after

-12-

beginning deliberations, the jury returned to court and asked to see the letter itself. *Id.* The trial

judge told them that the letter was not in evidence and ordered them to return to deliberations.

*Id.*

### B.   Procedural Default

In his Petition, Morningstar argued that failure to admit the letter violated KY. R. EVID.

404. R. 1, Memo. of Facts at 12–14. As Judge Atkins noted, this claim was procedurally

defaulted because the Kentucky Supreme Court disposed of it on procedural grounds–namely that

the trial court's alleged error of failing to admit the letter was not preserved for its review because

Morningstar's counsel did not move to admit the letter. R. 16 at 4; *see also Harris v. Reed*, 489

U.S. 255, 260–61 (1989) (stating that procedural default "has been applied routinely to state

decisions forfeiting federal claims for violation of state procedural rules") (citations omitted).

Judge Atkins found that the Commonwealth had waived Morningstar's procedural default by

failing to raise it in its brief and, therefore, proceeded to address the merits of this claim. R. 16 at

4 (citing *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005)).

The Court views the Commonwealth's discussion of procedural default in its Answer to

Morningstar's Petition as sufficiently raising the issue so as to avoid waiver. *See* R. 9 at 20–24

(discussing procedural default). The Commonwealth did not object to the Report and

Recommendation, however, which generally results in waiver of any objections. *Spencer v.

Bouchard*, 449 F.3d 721, 724 (6th Cir. 2006) (stating that a party who fails to object in a timely

manner to a magistrate's recommendations of which the party had notice is "deemed to waive

review of the district court's adoption of the magistrate judge's recommendations"). Whether

waiver also applies here where the Commonwealth obtained the result it wanted–the magistrate's

-13-

recommendation to dismiss the Petition–though not necessarily for the reasons it wanted–on the merits versus procedural default–may be debatable. Because the merits of Morningstar's claim that the trial court violated state evidence law in failing to admit the letter do not entitle him to habeas relief, the Court need not resolve this question.

### C.      Standard of Review

Unlike Morningstar's Confrontation Clause claim, the standard of review set forth in § 2254 does not apply to his claim that the trial court's failure to admit the letter violated KY. R. EVID. 404. Section 2254 applies only when a claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Here, because the Kentucky Supreme Court disposed of this claim on procedural grounds by holding that the issue was not preserved for its review, the court did not address the claim's merits. Normally, Morningstar's procedural default would preclude this Court from reviewing it in his Petition. *See Howard v. Bouchard*, 405 F.3d 459, 475 (6th Cir. 2005) (stating that procedural default "precludes federal courts from reviewing claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement"). But, as just discussed, the Court will address the merits of this claim based on the circumstances of this case.

In situations such as this where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a petitioner's claim de novo. *Id.* at 467 ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims de novo."); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (reviewing habeas petitioner's sufficiency-of-the-evidence claim de novo where the state

courts had considered the admissibility of the evidence but not the sufficiency of the evidence); *Pennington v. Jones*, No. 05-71976, 2006 WL 322474, at *2 (E.D. Mich. Feb. 10, 2006) (unpublished) (reviewing habeas petitioner's claim de novo where he raised it for the first time in his petition).

D.   **Merits of Morningstar's Claim that the Trial Court Violated the Kentucky Rules of Evidence**

Judge Atkins concluded that any violation of Kentucky evidence law in failing to admit the letter was not severe enough to warrant habeas relief. R. 16 at 16–17. Morningstar objected to this conclusion. R. 18 at 5, 7.

Questions of state law are not reviewable in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Morningstar instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, the Sixth Circuit has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

But that is not the case here. Even assuming the trial court erred by not allowing the jury

to see the letter itself during deliberations, that error did not render Morningstar's trial fundamentally unfair where the contents of the letter were put in front of the jury through defense counsel's direct examination of C.C. and reinforced in his closing argument such that "defense counsel effectively impeached C.C.'s testimony when he read C.C.'s allegations from the letter into evidence . . . ." *Morningstar*, 2007 WL 189020, at *6.

IV.   **SUFFICIENCY OF THE EVIDENCE**

A.   **Exhaustion and Procedural Default**

As discussed, the Court construes Morningstar's Petition as raising a claim that the proof against him was constitutionally insufficient.  R. 1, Memo. of Facts at 14–17.  Judge Atkins noted that Morningstar did not raise this claim in his direct appeal to the Kentucky Supreme Court; rather, Morningstar only asserted a violation of KY. R. EVID. 404 and raised the constitutional claim for the first time in his Petition.  R. 16 at 4–6.  For this reason, Judge Atkins concluded that Morningstar had not exhausted his state remedies for the constitutional claim because he did not fairly present it to the state courts.  *Id.*  Judge Atkins addressed the merits of the claim, however, because a court may consider a petition containing an unexhausted claim when "the court determines that the petition must be denied in its entirety."  *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Court views Morningstar's failure to raise his sufficiency-of-the-evidence claim in the state courts as raising issues of procedural default, not just exhaustion.  A motion to vacate Morningstar's sentence under KY. R. CRIM. P. 11.42 is "limited to issues that were not and could

not be raised on direct appeal." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006);

*Sanborn v. Commonwealth*, 975 S.W.2d 905, 909 (Ky. 1998) (same).  Moreover, "[i]nsufficiency

of the evidence to support his conviction is not a ground for relief in an RCr 11.42 proceeding."

*Newberry v. Commonwealth*, 451 S.W.2d 670, 671 (Ky. 1970); *Harris v. Commonwealth*, 441

S.W.2d 143, 144 (Ky. 1969) ("Insufficiency of evidence is not a ground for relief authorized by

RCr 11.42.").  Morningstar's inability to assert his sufficiency-of-the-evidence claim in a motion

under KY. R. CRIM. P. 11.42–both because he could have raised this claim in his direct appeal to

the Kentucky Supreme Court and because such claims cannot be raised in KY. R. CRIM. P. 11.42

motions–means this claim is procedurally defaulted.  *See O'Sullivan v. Boerckel*, 526 U.S. 838,

848 (1999) ("There is no dispute that this state court remedy–a petition for leave to appeal to the

Illinois Supreme Court–is no longer available to Boerckel; the time for filing such a petition has

long passed.  Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois

Supreme Court in a timely fashion has resulted in a procedural default of those claims.") (citation

omitted); *Ramsey v. Deuth*, No. 06-213, 2007 WL 594705, at *12 (E.D. Ky. Feb. 20, 2007)

(unpublished) ("Since petitioner's claim that there was insufficient evidence to support his First

Degree PFO conviction was not raised on direct appeal and may not be properly raised for the

first time in an RCr 11.42 motion, it has been procedurally defaulted.").

   The unavailability of a motion to vacate his sentence pursuant to KY. R. CRIM. P. 11.42

not only means Morningstar's sufficiency-of-the-evidence claim is procedurally defaulted, but also

that it is exhausted.  In situations such as this, the doctrines of exhaustion and procedural default

largely merge.  *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (stating that a petitioner's claims

are exhausted if it is clear that his claims are procedurally barred under state law); *Castille v.*

-17-

*Peoples*, 489 U.S. 346, 351 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims are now procedurally barred under Pennsylvania law.");
*Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002) ("If a petitioner failed to present his claims in state court and can no longer raise them through any state procedure, state remedies are no longer available, and are thus exhausted."); *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."); *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995) ("If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.  However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal.").

As with Morningstar's claim of a violation of state evidentiary law, however, an analysis of the merits of his sufficiency-of-the-evidence claim demonstrates he is not entitled to habeas relief.  Consequently, even though this claim is procedurally defaulted, the Court will proceed to address it on the merits.

### B.    Standard of Review

The Court will review Morningstar's sufficiency-of-the-evidence claim de novo for the same reasons such a review is warranted for the alleged violation of the Kentucky Rules of Evidence, as discussed above.

C.      **Merits of Morningstar's Sufficiency-of-the-Evidence Claim**

In assessing whether there is sufficient evidence to support Morningstar's conviction, the Court must "determine whether, after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McKenzie*, 326 F.3d at 727 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Here, Morningstar was convicted of four counts of second degree rape. R. 16 at 1. Under Kentucky law, second degree rape occurs when a person eighteen years old or more engages in sexual intercourse with another person less than fourteen years old. KY. REV. STAT. § 510.050(1). There was ample evidence to support Morningstar's conviction under this statute.

As an initial matter, nothing in the record suggests there is a dispute that Morningstar was eighteen years old or more and that C.C. was younger than fourteen years old at the time the rapes occurred. As to whether Morningstar engaged in sexual intercourse with C.C., testimony by C.C. that Morningstar raped her as well as physical evidence consistent with this testimony provide sufficient evidence to satisfy the standard set forth in *Jackson*.

C.C. testified that Morningstar raped her repeatedly in the home she shared with her mother and Morningstar. *Morningstar*, 2007 WL 189020, at *1. C.C. also testified that Morningstar raped her one time in the back of his Nissan Pathfinder. *Id.* Regarding the rape in Morningstar's Pathfinder, "C.C. alleged that Morningstar had sexual intercourse with her while she was lying on a pink and white blanket in the back of the vehicle. At the time, she was having her menstrual period, and he ejaculated on her stomach. He used a blue and white blanket to clean the ejaculate from her stomach." *Id.* The pink and white blanket and the blue and white

-19-

blanket were tested for blood, semen, and saliva.  *Id.*  Multiple semen stains and human blood

were found on the pink and white blanket, and one of the semen stains and the blood stain were

submitted for DNA testing.  *Id.*  The testing revealed the blood on this blanket was C.C.'s, but the

semen was not Morningstar's.  *Id.*  As for the blue and white blanket, multiple semen stains were

identified, and one of them was submitted for DNA testing.  *Id.*  DNA testing revealed that the

semen on this blanket belonged to Morningstar.  *Id.*  Thus, the physical evidence was consistent

with C.C.'s testimony because C.C's blood was found on the blanket she laid on during the rape

and Morningstar's semen was found on the blanket he used to clean his ejaculate from C.C.'s

stomach.  While the semen stain on the pink and white blanket was not Morningstar's, "[i]t is the

province of the fact-finder, not this court, to weigh the probative value of the evidence and

resolve any conflicts in the testimony."  *McKenzie*, 326 F.3d at 727.  Further, "[i]n assessing the

sufficiency of the evidence, 'we do not weigh the evidence, assess the credibility of the witnesses,

or substitute our judgment for that of the jury.'"  *United States v. Jackson*, 55 F.3d 1219, 1225

(6th Cir. 1995) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)).

After viewing the evidence in the light most favorable to the Commonwealth, the Court

concludes that a rational trier of fact could have found beyond a reasonable doubt that

Morningstar engaged in sexual intercourse with C.C. and, therefore, that he was guilty of second-

degree rape.  The evidence in the record thus was constitutionally sufficient to support

Morningstar's conviction, and he is not entitled to habeas relief.

## V.    EVIDENTIARY HEARING

Section 2254(e)(2) of AEDPA sets forth certain requirements for obtaining an evidentiary

hearing in a habeas proceeding where a petitioner has "failed to develop the factual basis of a

claim in State court proceedings." 28 U.S.C. § 2254(e)(2) (requiring a petitioner to show that the

claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by

the Supreme Court, that was previously unavailable or a factual predicate that could not have

been previously discovered through the exercise of due diligence). The Supreme Court has held

that "failed" within the meaning of § 2254(e)(2) refers to "a lack of diligence, or some greater

fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420,

432 (2000). Here, Morningstar sought to develop evidence during his trial regarding the claims

he raises in his Petition by attempting to introduce into evidence testimony and letters regarding

C.C.'s pregnancy fears and her other accusations of rape, in addition to requesting oral argument

on his appeal to the Kentucky Supreme Court, R. 9, Br. for Appellant at Intro. As a result, he has

demonstrated the diligence necessary to escape application of § 2254(e)(2)'s evidentiary hearing

prerequisites. *See Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc) ("Here, Getsy

sought to develop evidence regarding his judicial-bias claim both at trial and in his postconviction

proceedings in state court. He has thus demonstrated diligence in accordance with §

2254(e)(2).")

Though Morningstar overcomes the initial statutory hurdle to obtaining a hearing, "the

fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2)

does not entitle him to one." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). "In deciding

whether to grant an evidentiary hearing, a federal court must consider whether such a hearing

could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

the applicant to federal habeas relief." *Schriro v. Landrigan*, --- U.S.----, 127 S. Ct. 1933, 1940

(2007). Furthermore, "[b]ecause the deferential standards prescribed by § 2254 control whether

-21-

to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schiro*, 127 S. Ct. at 1940.

In this case, no evidentiary hearing is required. Morningstar argues that the trial court violated his constitutional right to confront adverse witnesses by limiting cross-examination of C.C. and that it erred by not allowing into evidence a letter written by C.C. in which she accused other men of molesting her. The relevant facts required to address these issues can be determined from the record. While Morningstar argues that the record is not complete without C.C.'s letter accusing other men of molesting her, testimony from witnesses that would have established his innocence, and testimony from expert witnesses regarding C.C.'s psychology and the lack of forensic evidence, R. 18 at 1–2, these facts are not necessary to the Court's disposition of the issues presented by his Petition or his objections to the Report and Recommendation. Moreover, as discussed above, Morningstar's claims are insufficient to support a claim for habeas relief. Thus, no additional factual inquiry is needed, and the Court agrees with the Judge Atkins that Morningstar is not entitled to an evidentiary hearing.

## VI.   CERTIFICATE OF APPEALABILITY

Finally, the Court also finds that a certificate of appealability should not issue in this case on any of Morningstar's claims. To be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Morningstar's claims plainly fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

VII.   CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

1.      United States Magistrate Judge Edward B. Atkins's Report and Recommendation,

R. 16, is **ADOPTED.**

2.      Morningstar's objections, R. 18 & 19, to the Magistrate Judge's Report and

Recommendation are **OVERRULED**.

3.      Morningstar's Petition for a Writ of Habeas Corpus is **DENIED**.

4.      The Court recommends that a Certificate of Appealability not issue on any claim

raised by Morningstar in his Petition.  *See* 28 U.S.C. §2253(c).

5.      A separate judgement will be entered contemporaneously with this Memorandum

Opinion and Order.

This the 21st day of July, 2008.

**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**